

FILED
MAR 13 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | Case No. 06-25337-D-13L |
| ROBERT P. MARSON, | Docket Control No. RPB-4 |
| Debtor. | Date: March 4, 2008<br>Time: 1:00 p.m.<br>Dept: D |

**MEMORANDUM DECISION**

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

The motion of Raymond P. Burton, Jr. ("the Applicant") for a first and final allowance of attorney's fees and costs, Docket Control No. RPB-4 ("the Motion"), came on for hearing on March 4, 2008. Robert P. Marson ("the Debtor"), having previously filed written opposition, appeared at the hearing on his own behalf,[1] and the Applicant appeared on his own behalf. No other opposition was filed or presented. For the reasons set forth below, the court will grant the Motion.

The Debtor, through the Applicant as his then attorney of record, filed a voluntary chapter 13 petition on December 13, 2006, thereby commencing this case. The Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys and the Disclosure of Compensation of Attorney for Debtor, both filed December 28, 2006, stated that initial attorney's fees charged in

---

1. The court granted the Applicant's motion to withdraw as the Debtor's counsel on December 2, 2007.

the case were $5,000, of which $1,676 was paid by the Debtor before the filing of the petition.[2] The Applicant opted to be paid the balance of the initial fee, $3,324, through the Debtor's chapter 13 plan, pursuant to this court's Guidelines for Payment of Attorneys' Fees in Chapter 13 Cases. According to the Motion, that balance has been paid through the confirmed plan.[3]

The Applicant now seeks approval of an additional $20,036.10 in attorney's fees and costs.[4] In support of the Motion, the Applicant submitted a detailed billing statement setting forth the dates and descriptions of the services performed and the time spent on each, as well an itemization of the costs advanced, and a declaration of the Applicant testifying to the accuracy of the billing statement.

The Debtor opposes the Motion on the grounds that (1) the Applicant was unethical and dishonest, (2) the Applicant took funds of the Debtor from the Applicant's client trust account against the instructions of the Debtor, (3) the Applicant did not

---

2. The Motion indicates the Applicant was also paid $274 as a advance of the filing fee for the petition and $50 as an advance of the consumer credit counseling fee, for a total initial fee of $5,324.

3. The Debtor's first amended chapter 13 plan, filed February 13, 2007, was confirmed by order filed June 12, 2007.

4. The Motion does not break down this total as between fees and costs. Instead, the Motion lists attorney's fees incurred in the case at $24,926, and costs at $434.10, for a total of $25,360.10. The motion then deducts the $5,324 previously paid to arrive at a balance due of $20,036.10.

It appears the $5,324 previously paid was applied to attorney's fees of $5,000, and costs of $324 [$274 for the filing fee and $50 for the credit counseling fee]. Thus, it appears that of the additional $20,036.10 now sought, $19,926 is on account of fees and $110.10 is for costs.

act in the Debtor's best interest, (4) the Applicant withdrew from representation of the Debtor with pending court dates in an adversary proceeding, and (5) the Applicant sought court approval of a compromise the Debtor did not want.[5]

Section 330 of the Bankruptcy Code sets out the standards by which courts should determine the reasonableness of fees under Section 329, and reasonableness is determined by looking at the nature, extent, and value of the services rendered. See In re Eliapo, 298 B.R. 392, 401 (9th Cir. BAP 2003). In determining the amount of reasonable compensation, the court considers the nature, extent, and value of the services rendered, taking account of all relevant factors, including the time spent, the rates charged, whether the services were necessary to the administration of, or beneficial at the time they were rendered toward the completion of the bankruptcy case, whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field, and the customary compensation of comparably skilled attorneys in other types of cases. 11 U.S.C. § 330(a)(3).

Based on the court's review of the billing statement and the record in this case and its related adversary proceeding, Marson

---

5. The accusations that the Applicant was unethical and dishonest and that he did not act in the Debtor's best interest are stated as conclusions, and are unsupported except by reference to the other three specific complaints. Thus, they will not be addressed separately.

v. Marson, Adv. No. 07-2012, and given the court's general familiarity with the case and adversary proceeding, the court concludes that the rate charged ($220 per hour) is not disproportionate to the quality of the services provided, and that the time spent (113.3 hours) is not disproportionate to the problems addressed by the Applicant in the case and adversary proceeding. The court recognizes that the services rendered have not been to the Debtor's satisfaction, but concludes that the parent case and the adversary proceeding have been handled competently and reasonably.

The Debtor's opposition begins with a brief history of his conflicts with his brother, Edward Marson, in connection with their partnership business known as Marson's Big & Tall, which conflicts resulted in a state court partnership dissolution action that was pending when this chapter 13 case was commenced.[6] The Debtor complains that the Applicant "did nothing" to assist him with these problems prior to the filing of the chapter 13 petition, but the Debtor's dissatisfaction with the Applicant was not sufficient to cause him to look elsewhere for representation in the chapter 13 case.

The Debtor's complaints about the Applicant's conduct in the chapter 13 case center around the Debtor's dissatisfaction with a compromise of the adversary proceeding, a compromise this court approved over the Debtor's objection, at a hearing held March 11, 2008. A good portion of the Debtor's opposition to the present

6. The Applicant removed the state court action to this court on January 10, 2007, and it was designated Adv. No. 07-2012.

Motion concerns an asset evaluation report prepared by one Kevin Eckard in connection with the parties' attempts to mediate the adversary proceeding. The Debtor complains that the Applicant prevented him from having any input into the report. This contention is contradicted by the Applicant's testimony, and independently, by a declaration of Mr. Eckard, filed February 11, 2008 in the adversary proceeding.[7]

The Debtor's contention that the Applicant withdrew $300 from his client trust account without the Debtor's permission, and against his explicit instructions, is similarly misplaced. The Applicant withdrew the $300 for the purpose of paying the filing fee to answer a complaint against the Debtor's brother, pursuant to a hold-harmless agreement between the Debtor and his brother. The Debtor's account of the transaction is contradicted by the Applicant's account, and the latter's version is supported by letters dated June 18, 2007 to the Debtor and his wife, and to an opposing attorney, as well as by a letter to the debtor and his wife requesting permission to transmit the letter to the opposing attorney.

Based on this documentary evidence, the court accepts the Applicant's version of these events, but even if the Debtor's version were correct, the court finds that the $300 was spent on behalf of the Debtor, pursuant to his agreement with his brother,

---

7. Mr. Eckard stated in his declaration that in his conversations with the Debtor, the Debtor had "verified his agreement with" the real estate valuations provided to Eckard by the Debtor's brother. Mr. Eckard also testified to a telephone conversation with the Debtor's wife, Marlene Marson, who "stated to me that she understands my report; where and how I derived my conclusions. She indicated to me that she had no objection to my conclusions."

at a time when the Debtor knew an answer to the complaint was due.  The court also finds that the Debtor ratified the Applicant's conduct in paying the filing fee by later signing the two settlement agreements with his brother, referenced below.

The Debtor next complains that the Applicant withdrew as his counsel at a time when there were pending court hearings in the adversary proceeding.  The record reveals that the Debtor did not oppose the Applicant's withdrawal, either in writing or at the hearing, and that the court continued the pretrial conference to allow the Debtor time to find replacement counsel.  See transcript of November 20, 2007 hearing, DN 40 in Adv. No. 07-2012.  The court thus finds no harm to the Debtor from the timing of the Applicant's motion to withdraw.

Finally, the Debtor complains that the Applicant coerced him into the settlement with his brother, a settlement he now claims is not in his best interest.  The court stated its findings of fact and conclusions of law regarding the settlement on the record at the March 11, 2008 hearing on the motion of Edward Marson for approval of the compromise.  As stated therein, the court finds that the settlement resulted from lengthy negotiations, including two mediation sessions with the court-appointed resolution advocate.  The Debtor signed not one but two settlement agreements, on dates one month apart, and between those two dates, the Debtor wrote to the Applicant indicating he intended to take a route not contemplated by the settlement.  Yet he ultimately signed the second version of the settlement agreement.

/ / /

The Debtor stated at the hearing that he did not read that second settlement agreement before he signed it, and his opposition to this Motion indicates he read it only after he returned to his place of business, at which point he allegedly discovered that the Applicant had lied to him about its contents. However, by the time of the second mediation session, on October 12, 2007, when the second agreement was signed, the Debtor had expressed dissatisfaction with the Applicant, and was deeply distrustful of his brother and his brother's counsel. Under these circumstances, it was not reasonable for the Debtor to sign the settlement agreement without reading it first, and having done so, the Debtor cannot reasonably complain about the agreement or about the Applicant's services leading up to the agreement.

In short, the court concludes that the Debtor had a change of heart after he signed the first settlement agreement, but evaluated the situation and decided to sign the second version anyway. After signing, he again experienced "buyer's remorse," and attempted to withdraw from the settlement. The court also concludes that the Debtor has transferred his dissatisfaction with the settlement to a general dissatisfaction with the Applicant. A client's unhappiness with the outcome of a case, however, does not demonstrate that the services performed by the attorney were not necessary or reasonable.

## III. CONCLUSION

The court concludes that, in light of the factors outlined in § 330(a)(3), the fees and costs requested are reasonable and were necessary to the administration of the bankruptcy case and

the adversary proceeding. Accordingly, the court will enter an order granting the Motion.

Dated: March 13, 2008

Robert Bardwil
ROBERT S. BARDWIL
United States Bankruptcy Judge

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the United States Trustee
501 "I" Street, Suite 7-500
Sacramento, CA 95814

Lawrence Loheit
P.O. Box 1858
Sacramento, CA 95812-1858

Raymond Burton, Jr.
164 Maple Street, #5
Auburn, CA 95603-5049

Robert Marson
12389 New Airport Rd.
Auburn, CA 95603

DATE: March 13, 2008

Andrea Lovgren